No. 68,817

In the Matter of the Inquiry Relating to DON L. ALVORD, District Magistrate Judge.

(847 P.2d 1310)

Opinion filed March 5, 1993.

*Edward G. Collister, Jr.,* of Collister & Kampschroeder, of Lawrence, argued the cause for petitioner, Commission on Judicial Qualifications.

*Thomas J. Berscheidt,* of Berscheidt & Keeley, of Great Bend, argued the cause for the respondent.

*Per Curiam:* This is an original proceeding relating to judicial conduct. The Commission on Judicial Qualifications found that respondent, District Magistrate Judge Don L. Alvord, had violated Canon 2 (1992 Kan. Ct. R. Annot. 347) and Canon 3 (1992 Kan. Ct. R. Annot. 348) of the Code of Judicial Conduct, Supreme Court Rule 601, and recommended that he be publicly censured. A majority of the court agrees. The Commission's findings of fact and conclusions of law were unanimous; however, two members dissented from the recommendation of public censure. (The Commission is composed of two nonlawyers, three lawyers, and four active or retired judges. Rule 602 [1992 Kan. Ct. R. Annot. 361]. Two members voted for the sanction of a Rule 620 admonishment [1992 Kan. Ct. R. Annot. 369].) Admonishment is effected by the Commission and not by this court.

The findings of fact, conclusions of law, and recommendations of the Commission are as follows:

"The Commission concludes the following facts are established by clear and convincing evidence.

"1. Respondent is a district magistrate judge of the 20th Judicial District. Respondent's duties include judicial duties at the Rice County Courthouse, Lyons, Kansas, and at the Barton County Courthouse, Great Bend, Kansas. At all times relevant hereto, Respondent served in such judicial capacity.

"2. Dara Mollenkamp is 21 years old. In September 1992, she began working as a clerk in the District Court Office in Barton County, Kansas. During the times relevant hereto, she was working part-time in the Office of the Clerk of the District Court in Barton County, Kansas, and also as needed in the Office of the Clerk of the District Court of Rice County, Kansas.

"3. Ms. Mollenkamp was introduced to Respondent several days before an incident that happened at K-Bob's, a Great Bend restaurant where she also worked part-time in November 1991. On that occasion when she was not working, during a conversation between the two, Respondent suggested that the two of them might date. Ms. Mollenkamp inquired of Respondent how old he was and when he told her "39," she told him he was old enough to be her father, so she did not think she could go out with him.

"4. Between that occasion and December 17, 1991, on several occasions, Ms. Mollenkamp indicated Respondent rubbed the back of her neck while she was working in the Clerk's office. Respondent stated he thought he might have touched her shoulder or the back of her neck. Ms. Mollenkamp indicated to her supervisor that she didn't approve of this touching, but she did not indicate her displeasure to Respondent.

"5. On December 17, 1991, after Ms. Mollenkamp was asked to work in the Rice County Courthouse, as she drove to work she received a traffic ticket in Great Bend, Kansas. On that same day, over the noon hour, she, a third party, and Respondent apparently went to lunch. At lunch there was some discussion between Respondent and Ms. Mollenkamp about her ticket, and the possibility of a diversion as an option to resolve the ticket situation. There was some general discussion between the two about the ticket.

"6. Later after returning from lunch, Respondent approached Ms. Mollenkamp who was standing at the water cooler at the Clerk's office and informed her that he had talked to the City Attorney of Great Bend, Kansas, about the ticket and the latter was going to see what could be done about it. The essence of Respondent's conversation with Ms. Mollenkamp informed her that he had contacted the City Attorney and that there would be some consideration of relief of some kind concerning the ticket's issuance. As this part of the discussion ended, Respondent suggested to Ms. Mollenkamp that she not get another traffic ticket and he then patted Ms. Mollenkamp on her buttocks.

"7. Bob Suelter, Great Bend City Attorney, testified and presented unchallenged testimony concerning the following:

(a) On December 17, 1991, Respondent called Mr. Suelter, said he had a clerk working for him by the name of Dara Mollenkamp, who was charged with going 29 in a 20 m.p.h. school zone and wanted to know if Mr. Suelter could do anything about it. Mr. Suelter indicated he could call in the police officer and look at the ticket and see if there was anything that could be done. Mr. Suelter indicated he would get back to Respondent.

(b) Mr. Suelter then, again using notes in his file, testified that on January 6, 1992, Respondent inquired if Mr. Suelter had found out anything concerning the ticket. Mr. Suelter indicated that his office needed to get a letter to the officer to discuss the matter. Since the matter was on the appearance docket that day, Mr. Suelter caused a plea of not guilty to be entered for Ms. Mollenkamp. Ms. Mollenkamp never spoke with, corre-

sponded with, or hired an attorney to visit with any prosecutor concerning this ticket.

"8. Ms. Mollenkamp did only two things concerning the ticket: first, have a conversation with Respondent concerning it; and second, finally at the appropriate time paid the ticket. On January 6, 1992, Respondent called Ms. Mollenkamp over the intercom and told her that he talked to the City Attorney, that they were going to enter a plea of not guilty since that was the appearance day. Ms. Mollenkamp had no knowledge about what happened after that time, she merely paid the ticket.

"9. After the touching incident on December 17, 1991, Ms. Mollenkamp said something to her supervisor, Carolyn Burns, the Clerk of the District Court. Ms. Mollenkamp told Ms. Burns that somebody needed to talk to the Judge about how he was treating her. Ms. Burns reported the incident to Fred Jamison, the District Court Administrator who then interviewed Ms. Mollenkamp, ultimately reducing her responses to his questions to a written form. An investigation followed, and then this proceeding. Ms. Mollenkamp's statement; a second statement given under oath on January 15, 1992, to Jack Ford, investigator for the Office of the Judicial Administrator; and her testimony in this hearing were all consistent.

### "CONCLUSIONS OF LAW

"Count I involves Respondent's personal relationship with Dara Mollenkamp.

"Canon 2 of the Rules of the Supreme Court Relating to Judicial Conduct provides:

'A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.

'A. A judge should . . . conduct himself at all times in a manner that promotes public confidence in the integrity . . . of the judiciary.'

The commentary to that Canon states:

'Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and the appearance of impropriety. He must expect to be the subject of constant public scrutiny.'

"Respondent's pattern of conduct toward Ms. Mollenkamp, a 21-year-old clerk in the Office of the Clerk of the District Court, violates this Rule. In particular, the act of Respondent patting this young lady on the buttocks was irresponsible and/or improper and his conduct evidences a violation of this Canon. This evidence establishes the violation by clear and convincing evidence.

"Canon 3A(3) provides in part:

'A Judge Should Perform the Duties of His Office Impartially and Diligently.

'A. Adjudicative Responsibilities.

(3) A judge should be patient, dignified, and courteous to . . . others with whom he deals in his official capacity . . . .'

"The conduct identified in the Findings of Fact suggests that Respondent was not dignified and courteous in his treatment of Ms. Mollenkamp. Consequently, the conduct also evidences a violation of Canon 3 of the Rules of the Supreme Court Relating to Judicial Conduct.

"Count II alleges a violation concerning the conduct of Respondent in contacting the City of Attorney of Great Bend with respect to Ms. Mollenkamp's ticket. Again, the evidence is clear and convincing. It is basically uncontroverted.

"Again, Canon 2 provides:

'A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.

'A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the Judiciary.

'B. . . . he (a judge) should not lend the prestige of his office to advance the private interests of others . . . .'

"Respondent made an unsolicited phone call on behalf of Ms. Mollenkamp to a prosecutor asking if anything could be done about a ticket. In view of the prosecutor's testimony and Respondent's testimony that there was no attempt to use the Respondent's official position to influence the outcome of the case, it is determined that there was no actual use of influence attempted by Respondent, and none was perceived by Mr. Suelter. However, a violation has still occurred. Respondent took it upon himself on two occasions to call the prosecutor on behalf of this young lady. He inquired of the prosecutor whether anything could be done about the ticket (meaning reducing the ticket or scheduled fine in some manner) and conveyed to Ms. Mollenkamp information that he had so contacted the prosecutor. This evidence is uncontradicted. Respondent violated the provisions of Canon 2 of the Rules of Judicial Conduct by these acts.

## "MITIGATING FACTORS

"An impressive number of positive references were presented in support of Respondent. From the letter references and from the testimony introduced by character witnesses at the hearing, it is obvious that Respondent enjoys a good reputation among those with whom he must work while in the Courtroom. The witnesses and the letters that constitute Exhibit A attest to Respondent's dignified and courteous treatment of attorneys, litigants, and witnesses in the Courtroom and the exemplary manner in which he conducts his court.

## "RECOMMENDATION

"The Commission finds that Respondent has violated the Canons of Judicial Conduct as set out above. However, he was not advised that his conduct was offensive to Ms. Mollenkamp and did not actually attempt to use his official position to influence the outcome of the traffic case.

"The Commission recommends to the Supreme Court of the State of Kansas that Respondent Donald L. Alvord be disciplined for the violations set forth above by public censure."

Respondent filed a response indicating acceptance of the findings of fact and conclusions of law. Having accepted the Commission's findings of fact and conclusions of law, respondent cannot now challenge those findings and conclusions, and he does not attempt to do so. Respondent requested the opportunity to appear in person with counsel to "discuss the recommended discipline." See Rule 623(d) (1992 Kan. Ct. R. Annot. 371).

Although respondent chose not to address the court, his counsel advanced arguments in support of admonishment. Counsel for the respondent asserts that (1) the findings of fact do not justify public censure, (2) Judge Alvord has suffered from the public airing of these proceedings as reported in the local press, and (3) the letters of support from members of the bar who have appeared before him are persuasive in support of private admonishment. We note that the Commission considered the letters in the portion of its order labeled "Mitigating Factors."

We adopt the Commission's findings of fact, conclusions of law, and recommendation of public censure.

More than 20 years ago, Dean Robert McKay wrote: "The ethical expectations of the public have risen even more rapidly than have the perceptions of the judges of what is now expected of them." McKay, *The Judiciary and Nonjudicial Activities*, 35 Law & Contemp. Probs. 9 (1970).

More recent commentators have observed that "[w]omen in the courts in any capacity may find themselves subjected to inappropriate, overly familiar and demeaning forms of address; comments on their appearance, their clothing, and their bodies; sexist remarks and jokes; and unwelcome verbal and physical advances." Shaman, Lubet, & Alfini, Judicial Conduct and Ethics § 2.09 (1990) (citing Women in The Law § 15.04 [1] [C.H. Lefcourt, ed. Release #2, July 1988]).

Perhaps the most significant concept in the Code of Judicial Conduct is the admonishment to avoid the appearance of impropriety. Perceptions may become reality. Heightened sensitivity to respectful relationships in the Kansas judicial workplace is mandatory.

We have previously imposed public censure on a judge for interjecting himself into traffic ticket negotiations. *In re Miller*,

223 Kan. 130, 572 P.2d 896 (1977). We acknowledge that in *Miller* the judge's request was that another judge dismiss the ticket, with a parting remark after learning that the request would not be successful: "Well, I guess that is one favor I don't owe you." 223 Kan. at 131. However, in the case at bar, respondent made an unsolicited phone call on December 17, 1991, on behalf of Ms. Mollenkamp to a prosecutor asking if anything could be done about a ticket. A second inquiry was made by respondent on January 6, 1992, to find out if the prosecutor had discovered anything concerning the ticket. Ms. Mollenkamp never spoke with, corresponded with, or hired an attorney to visit with any prosecutor concerning this ticket.

Respondent has violated Canons 2 and 3. His conduct was not compatible with the high standards of conduct imposed upon members of the judiciary.

IT IS THEREFORE ORDERED that respondent Don L. Alvord be and he is hereby publicly censured by this court, and he is directed to pay the costs of this proceeding.

Effective this 5th day of March, 1993.